IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

YUSIF AKHUNDLU PETITIONER

V. CIVIL NO. 5:26-cv-00250-DCB-BWR

RAFAEL VERGARA RESPONDENT

REPORT AND RECOMMENDATION

Petitioner Yusif Akhundlu, a citizen and native of Azerbaijan, seeks a writ of habeas corpus under 28 U.S.C. § 2241 ordering Respondent to immediately release him from U.S. Immigration and Customs Enforcement (ICE) detention. Pet. [1] at 7. The Petition should be dismissed because Petitioner's detention while his removal proceedings are ongoing is statutorily mandated under 8 U.S.C. § 1225(b) and does not violate the Fifth Amendment's Due Process Clause.

I. BACKGROUND

On December 11, 2024, Petitioner applied for admission into the United States from Mexico at the Otay Mesa, California Port of Entry. Notice and Order of Expedited Removal [7-1]. Petitioner did not have a valid entry document and was detained for expedited removal under § 235(b)(1) of the Immigration and Nationality Act (INA). *Id.*

Petitioner expressed a fear of returning to Azerbaijan, an asylum officer found Petitioner demonstrated a credible fear, and, on March 2, 2025, Petitioner was placed into standard removal proceeding under § 240 of the INA (8 U.S.C. § 1229a). Notice to Appear [7-2]. On July 17, 2025, an immigration judge (IJ) denied as incomplete Petitioner's applications for asylum pursuant to INA § 208, withholding of removal

under INA § 241(b)(3), and withholding or deferral of removal pursuant to Article III of the Convention Against Torture. IJ Order [7-3] at 1. Petitioner was ordered removed to Azerbaijan. *Id.* at 4.

On July 30, 2025, Petitioner appealed the IJ's decision to the Board of Immigration Appeals (BIA). Filing Receipt [1-1]. According to the Executive Office for Immigration Review's (EOIR's) Automated Case Information portal, Petitioner's BIA appeal is still pending. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en (last visited Sept. 21, 2026).

II. DISCUSSION

28 U.S.C. § 2241 confers federal district courts "within their respective jurisdictions" the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241. The writ of habeas corpus is "available to every individual detained within the United States[,]" including noncitizens. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

"A district court has subject matter jurisdiction to hear an alien's Section 2241 petition challenging the lawfulness of his or her detention." *Wekesa v. United States Att'y*, No. 22-10260, 2022 WL 17175818, at *1 (5th Cir. Nov. 22, 2022); *see Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.");

*Imran v. Harper,* No. 25-30370, 2026 WL 93131, *1 (5th Cir. Jan. 13, 2026) ("district courts have subject-matter jurisdiction to review § 2241 petitions challenging the lawfulness of a noncitizen's detention[.]").

A. Petitioner Has No Statutory Right to a Bond Hearing

"[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)).

> As relevant here, applicants for admission fall into one of two categories, those covered by [8 U.S.C.] § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. *See* § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). *See* §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

*Id.* at 287-88.

Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of

> applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Id.* at 297.

Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). There is no statutory right to a bond hearing under § 1225(b), and nothing in the statutory text imposes a limit on the length of detention.

B. <u>Petitioner's Detention Without a Bond Hearing While His Removal Proceedings Are Ongoing Does Not Violate the Fifth Amendment's Due Process Clause</u>

Petitioner claims that his over 21-month ICE detention violates the Fifth Amendment's Due Process Clause. "The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law." *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (quoting U.S. Const. amend. V). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Id.* (citation omitted). "A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.*

This case does not raise the unsettled question pending before the en banc Fifth Circuit regarding whether aliens who evade inspection and are apprehended months or years later inside the United States are afforded due process protections

unavailable to aliens stopped at the border who have not resided in the United States. *See Sosnava-Rodriguez v. Ortega*, 180 F.4th 702, 726 (5th Cir. 2026), *reh'g* en banc *granted, opinion vacated*, No. 26-50183, 2026 WL 2014647 (5th Cir. July 10, 2026).

Petitioner was apprehended at the "threshold of initial entry" and "has no entitlement to procedural rights other than those afforded by statute." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020). "[A]n alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (internal citation and quotation omitted).

Three times, the Supreme Court has upheld the constitutionality of categorical, mandatory detention of certain classes of aliens in ongoing removal proceedings against due process challenges. *See Demore,* 538 U.S. at 530-31 (upholding detention without bond pending conclusion of removal proceedings for removable aliens convicted of certain crimes, concluding that "[d]etention during removal proceedings is a constitutionally permissible part of the process"); *Reno v. Flores,* 507 U.S. 292, 313 (1993) (rejecting "best interests" test and upholding regulatory scheme that required minors to remain in custody pending conclusion of their removal proceedings if their parents were in detention or otherwise unavailable to take care of them); *Carlson v. Landon,* 342 U.S. 524, 541-42 (1952) (upholding detention without bond pending conclusion of removal proceedings for deportable

aliens who were active Communists and finding "[d]etention is necessarily a part of this deportation procedure").

*Demore,* decided in 2003, stated without qualification that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 530. *Demore* did not limit this conclusion to certain criminal aliens, the subclass of aliens at issue in *Demore*. *Demore* instead observed that the Supreme Court "said more than a century ago [that] deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'" *Id.* at 523 (quoting *Wong Wing,* 163 U.S. at 235).

*Demore* relied on *Zadvydas* (decided in 2001), *Flores* (decided in 1993), and *Carlson* (decided in 1952). According to *Demore, Zadvydas, Flores,* and *Carlson,* the appropriate question to ask when an immigration detention statute is challenged on due process grounds is whether detention bears a reasonable relation to its purpose. *See Demore,* 538 U.S. at 527-28 (finding no-bond detention for certain criminal aliens necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings); *Zadvydas,* 533 U.S. at 699 (concluding that "where detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed")(internal brackets and citation omitted); *Flores,* 507 U.S. at 309 (finding regulation did not go "beyond the scope of the Attorney General's discretion to continue custody over arrested aliens under 8 U.S.C. § 1252(a)(1)" because the

regulation had a "reasonable foundation" and "rationally pursue[d] a purpose that [was] lawful for the INS to seek"); *Carlson,* 342 U.S. at 532 ("Congress had before it evidence of resident aliens' leadership in communist domestic activities sufficient to furnish reasonable ground for action against alien resident Communists").

Detaining aliens while removal proceedings are ongoing serves the immigration purpose of preventing an unacceptable rate of flight that occurs when aliens are released from custody, "thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *See Demore,* 538 U.S. at 528; *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 508 (5th Cir. 2026). A 1996 Department of Justice report referenced by the Fifth Circuit in *Buenrostro-Mendez* found that "when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States." *Buenrostro-Mendez,* 166 F.4th at 508 (citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)). *Buenrostro* observed, "that situation exists today on a much larger scale." *Buenrostro-Mendez,* 166 F.4th at 508.

Neither the Supreme Court nor the Fifth Circuit has found that the Fifth Amendment's Due Process Clause is violated when detention pending removal proceedings becomes prolonged. While *Zadvydas* indicates that post-removal-period detention under 8 U.S.C. § 1231(a)(6) may not continue indefinitely, *Zadvydas* expressed no reservation regarding the permissible length of detention while an alien's removal proceedings are ongoing. *Jennings* explained that "§§ 1225(b)(1) and (b)(2), unlike § 1231(a)(6), provide for detention for a specified period. Section

1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention "for a [removal] proceeding," § 1225(b)(2)(A)." *Jennings,* 583 U.S. at 299. Petitioner's detention until his removal proceedings conclude is materially different from the indefinite detention that could potentially occur where removal is not "practically attainable." *Zadvydas,* 533 U.S. at 690.

Whether Petitioner is a flight risk or danger to the community is irrelevant under the text of 8 U.S.C. § 1225(b). No binding precedent concludes that the Government may only detain aliens in removal proceedings who are flight risks or dangers to the community, much less provides that these risks must be determined through individualized hearings. "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore,* 538 U.S. at 523.

Petitioner asserts a right that is missing from statutory text and is ultimately advancing a substantive due process claim. The doctrine of substantive due process protects those liberties "objectively, deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997). Substantive due process claims require a "'careful description' of the asserted fundamental liberty interest." *Id.* at 720-21 (quoting *Flores,* 507 U.S. at 302). While "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint –lies at the heart of the liberty" that the Fifth Amendment's Due Process

Clause protects, *Zadvydas,* 533 U.S. at 690, Petitioner asserts "[t]he impairment of a lesser interest," *Flores,* 507 U.S. at 305, – namely, the right of an alien apprehended at or near the border without valid documentation to seek release into the United States while his removal proceedings are ongoing. The Supreme Court has not recognized this as a fundamental right and instead has held that "[d]etention during removal proceedings is a constitutionally permissible part of the process." *Demore,* 538 U.S. at 526; *see Thuraissigiam,* 591 U.S. at 119 (observing that "respondent does not want 'simple release' but ultimately, the opportunity to remain lawfully in the United States.").

"The impairment of a lesser interest . . . demands no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose." *Flores,* 507 U.S. at 305. Detaining aliens while removal proceedings are ongoing rationally pursues the immigration purpose of preventing flight and ensuring prompt removal of illegal aliens following their removal proceedings.

In *Zadvydas,* removal was no longer "practically attainable" such that detention "did not serve its purported immigration purpose." *Zadvydas,* 533 U.S. at 690. Petitioner's removal is practically attainable. Seven months and six days after Petitioner arrived at the United States border, an IJ ordered him removed. Petitioner's choice to appeal the removal order to BIA has stayed Petitioner's removal and extended his detention under 8 U.S.C. § 1225(b) by, currently, fourteen months and four days. This does not suggest that Petitioner's efforts to oppose his removal

lack good faith, but "the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." *Demore*, 538 U.S. at 531 n.14.

In just the last five years, immigration cases have increased 104%, from 1,694,255 cases in 2021 to 3,469,569 in the third quarter of 2026. *See* EOIR Adjudication Statistics, Dep't of Just. (last updated July 24, 2026). The Supreme Court in *Thuraissigiam* noted in 2020 that "the credible-fear process and abuses of it can increase the burdens currently 'overwhelming our immigration system.'" *Thuraissigiam,* 591 U.S. at 112 (quoting 84 Fed. Reg. 33841 (2019)). *Thuraissigiam* observed that "[i]n 2019, a grant of asylum followed a finding of credible fear just 15% of the time." *Id.* at 113 (citing EOIR, Asylum Decision Rates in Cases Originating with a Credible Fear Claim (Oct. 2019)). "One can certainly understand [Petitioner's] frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait." *Curbelo v. Noem*, No. 2:26-cv-749-KCD-NPM, 2026 WL 925638, at *5 (M.D. Fla. Apr. 6, 2026). The "serious constitutional problem" of potentially "indefinite detention" found in *Zadvydas* does not exist here.

## III. RECOMMENDATION

It is recommended that the Petition [1] be dismissed without prejudice because Petitioner's detention while his removal proceedings are ongoing is statutorily

mandated and does not violate the Fifth Amendment's Due Process Clause.

IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy of the objections. *Id.* The district judge will determine de novo any part of the Report and Recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the Report and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *Id.*

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1).

**SIGNED,** this 21st day of September 2026.

s/ Bradley W. Rath

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE